| | |
|---|---|
| MARCO EGUCHI, et al., § | *This memorandum opinion and order was filed under seal on June 23, 2017 and is now being unsealed and filed as a public document. |
| Plaintiffs, § | |
| VS. § | Civil Action No. 3:16-CV-1286-D |
| JOHN F. KELLY, et al, § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

In this action by plaintiffs Marco Eguchi ("Eguchi") and Amanda Eguchi against defendants John F. Kelly, Donald Neufeld, James McCament, and Mark Hazuda (collectively, "CIS"),[1] Eguchi challenges a decision of U.S. Citizenship and Immigration Services ("CIS") denying his Petition for Alien Worker (I-140) as an alien of extraordinary ability. Concluding on the parties' cross-motions for summary judgment that CIS's decision was arbitrary or capricious, the court grants Eguchi's motion, denies CIS's motion, and remands this matter to CIS for further proceedings consistent with this memorandum opinion and order.

---

[1] When Eguchi initially filed this lawsuit, he sued Jeh C. Johnson and Leon Rodriguez as defendants in their official capacities. They have since been replaced by John F. Kelly and James McCament, respectively, who have been automatically substituted as defendants. *See* Fed. R. Civ. P. 25(d).

I

Eguchi is a Brazilian citizen and professional bull rider.[2] Since 2012 Eguchi has competed full-time in the United States with Professional Bull Riders ("PBR"), the world's premier bull riding association. In 2015 Eguchi filed with CIS a Form I-140 Immigrant Petition for Alien Worker and a Form I-485 Application to Adjust Status, seeking relief on the basis that he qualifies as an alien of extraordinary ability who warrants preferential treatment in visa issuance. CIS later issued a Request for Evidence ("RFE") seeking additional evidence to support Eguchi's petition, with which Eguchi complied, and denied his petition. Eguchi appealed to the Administrative Appeals Office, which upheld the denial of his petition.

Eguchi now brings this action challenging CIS's decision. The parties have filed cross-motions for summary judgment, presenting the question whether Eguchi has established that CIS's decision was arbitrary, capricious, or not otherwise in accordance with law.

II

When a summary judgment movant will not have the burden of proof on a claim, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond his pleadings and designate specific

---

[2]The parties' cross-motions do not contend that there are any contested issues of material fact.

facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

To be entitled to summary judgment on a claim on which the moving party will have the burden of proof, the party "must establish 'beyond peradventure all of the essential elements of the claim[.]'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the moving party must demonstrate that there are no genuine and material fact disputes and that the moving party is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

Eguchi contends that, as a matter of law, CIS's denial of his I-140 petition was arbitrary, capricious, or otherwise not in accordance with the law.[3]

A

The court reviews CIS decisions under § 706(2)(A) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). "An agency decision can be overturned only if a plaintiff can demonstrate that the decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Hassani v. Napolitano*, 2009 WL 2044596, at *2 (N.D. Tex. July 15, 2009) (Fitzwater, C.J.) (quoting *Boi Na Braza Atlanta, LLC v. Upchurch*, 2005 WL 2372846, at *5 (N.D. Tex. Sept. 27, 2005) (Lindsay, J.) (quoting § 706(2)(A))). "A decision is arbitrary or capricious only when it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Wilson v. U.S. Dep't of Agric.*, 991 F.2d 1211, 1215 (5th Cir. 1993) (internal quotation marks omitted). "A decision is not arbitrary or capricious if the agency considers the relevant factors and 'articulates a rational relationship between the facts found and the choice made.'" *Willingham v. Dep't of Labor*, 475 F.Supp.2d, 607, 612 (N.D. Tex. 2007) (Robinson, J.) (quoting *Louisiana* ex rel. *Guste v. Verity*, 853 F.2d 322, 327 (5th Cir. 1988)). Although the court must ensure that CIS engaged in "reasoned decisionmaking" in denying his petition, CIS "is entitled to considerable deference in its interpretation of the governing statute." *Boi Na Braza Atlanta*,

---

[3]For ease of reference, the court will refer to this standard throughout this memorandum opinion and order as the "arbitrary or capricious" standard.

2005 WL 2372846, at *2 (quoting *Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989)). "A reviewing court is not to substitute its judgment for that of the agency, and the court is to show proper deference to agency expertise." *Chi-Feng Chang v. Thornburgh*, 719 F. Supp. 532, 535 (N.D. Tex. 1989) (Fitzwater, J.). "Even if statutory or regulatory language is ambiguous, deference is usually given to the agency's interpretation." *Defensor v. Meissner*, 201 F.3d 384, 386 (5th Cir. 2000). Eguchi thus faces a high hurdle in attempting to establish that CIS's denial was arbitrary or capricious.

B

The Immigration and Nationality Act requires that CIS give priority to employment-based visas to certain classes of immigrants, including those with "extraordinary ability." 8 U.S.C. § 1153(b)(1)(A). Section 1153(b)(1)(A) requires that

> (i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics, which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,
> (ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability, and
> (iii) the alien's entry into the United States will substantially benefit prospectively the United States.

The Act's enabling regulation defines extraordinary ability as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). Sustained acclaim or recognition may be proved by a major, internationally recognized prize or award or evidence of at least three of ten specified criteria. *Id.* at § 204.5(h)(3). "A petition for an alien of extraordinary ability must

be accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." *Id.*

The submission of evidence is a procedural question. *Kazarian v. U.S. Citizenship and Immigration Servs.*, 596 F.3d 1115, 1121 (9th Cir. 2010).[4] CIS therefore may not conflate the final merits question of whether the petitioner has reached the very top of his field of endeavor (and thus is an alien of extraordinary ability) with the procedural question of whether the petitioner has sufficiently submitted three types of evidence. *Id.* Rather, at the first step, CIS must only determine whether the petitioner has met the evidentiary requirements. *Id.* If so, CIS then moves to step two, in which it makes a final determination of extraordinary ability. *Id.*

At the petition stage, the petitioner bears the burden of proof. 8 U.S.C. § 1361. "Commensurate with that burden is responsibility for explaining the significance of proffered evidence. The significance of membership in [a professional association] or of any awards, accolades, or certifications, is for him to put in context and explain in a meaningful way." *Repaka v. Beers*, 993 F.Supp.2d 1214, 1219 (S.D. Cal. 2014).

Eguchi contends that he satisfied four of the ten criteria with appropriate documentation: (1) "[d]ocumentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor[,]" 8

---

[4]The Ninth Circuit is the only court of appeals that has addressed this issue. CIS has endorsed *Kazarian*'s holding and follows it in practice. *See Visinscaia v. Beers*, 4 F.Supp.3d 126, 131 (D.D.C. 2013) (citing USCIS Adjudicator's Field Manual § 22.2(i)(i)(A)).

C.F.R. § 204.5(h)(3)(i) ("Awards Criterion"); (2) "[d]ocumentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields[,]" *id.* at § 204.5(h)(3)(ii) ("Membership Criterion"); (3) "[p]ublished material about the alien in professional or major trade publications or other major media relating to the alien's work in the field for which the classification is sought[,]" *id.* at § 204.5(h)(3)(iii) ("Publication Criterion"); and (4) "[e]vidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field[,]" *id.* at § 204.5(h)(3)(ix) ("Salary Criterion"). CIS responds that none of the evidence that Eguchi submitted was sufficient under the plain text of § 204.5(h)(3).

IV

The court concludes that Eguchi has established that CIS's denial of his visa petition was arbitrary or capricious as a matter of law.

A

Eguchi submitted evidence that he won Brazil's PBR Rookie of the Year in 2008, which he relies on in support of the Awards Criterion. The Awards Criterion requires evidence of a "lesser nationally or internationally recognized prize[] or award[] for excellence in the field of endeavor[.]" *Id.* at § 204.5(h)(3)(i). CIS neither disputes the authenticity of the award nor contends that the award is not "nationally or internationally recognized." Instead, CIS only maintains that "such an award by its very nature is limited to neophytes, excluding more experienced bull riders. And therefore, such an honor does not

measure your standing or selection from among those who are well established in the field *or show your extraordinary ability* under this criterion." R. 51 (emphasis added).

This reasoning impermissibly conflates *Kazarian* steps one and two. CIS responds that its reasoning was perhaps "inartful wording, but the point of the statement is that it is reasonable to look at the field of competitors—and any limitations on the field of competitors—to determine whether the plain language of the regulation has been satisfied." Ds. Reply 2. But it is well established that a reviewing court "must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

The regulation only required that Eguchi submit documentation of his receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor, which he did. A plain reading of CIS's decision indicates that it found Eguchi's documentation to be deficient because, in CIS's view, the documentation did not show that Eguchi had reached the very top of his field of endeavor or show his extraordinary ability, i.e., a step two determination. CIS "may [not] unilaterally impose novel substantive or evidentiary requirements beyond those set forth at 8 C.F.R. § 204.5." *Kazarian*, 596 F.3d at 1121. CIS could not have rationally concluded that receiving the Rookie of the Year award given by Brazil's premier bull riding organization was not probative of Eguchi's sustained national acclaim and recognition in the field. Because CIS did not articulate any

- 8 -

other basis for rejecting Eguchi's Rookie of the Year award, the court concludes that he has established beyond peradventure that CIS's decision as to the Awards Criterion was arbitrary or capricious.

B

Eguchi also contends that CIS improperly rejected numerous articles he submitted in support of the Publication Criterion. To satisfy the Publication Criterion, Eguchi must submit "[p]ublished material about [himself] in professional or major trade publications or other major media relating to the alien's work in the field for which the classification is sought[.]" *Id.* at § 204.5(h)(3)(iii). Eguchi submitted articles from various publications, including Yahoo! Sports, ESPN, and PBR's website. The articles acknowledge Eguchi's high rankings, victories, and earnings in PBR events. CIS rejected the articles for two reasons: (1) with the exception of the article on PBR's website, none of the articles was primarily about Eguchi; and (2) Eguchi submitted no evidence that the publications were major trade publications or other major media.

CIS concedes that the article from the PBR website is "primarily about" Eguchi. R. 52. The only question is whether the PBR website is a major trade publication.[5] CIS only concludes that Eguchi submitted no evidence that PBR's website is a major trade publication. But it is self-evident that the website of the world's premier professional bull riding association is a major publication for professional bull riding. *See Muni v. I.N.S.*, 891 F.

---

[5]Eguchi does not contend that PBR's website qualifies as major media.

Supp. 440, 444 (E.D. Ill. 1995) (concluding that petitioner did not need to show that National Hockey League's ("NHL's") own magazine was major trade publication). CIS could not have reasonably concluded otherwise. The court therefore holds that Eguchi has met his burden to show that CIS's decision as to the Publication Criterion was arbitrary or capricious.

C

Eguchi also maintains that CIS erred in disregarding his evidence of a high salary when compared to other PBR riders. The Salary Criterion requires "[e]vidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field[.]" 8 C.F.R. § 204.5(h)(3)(ix). Eguchi submitted evidence in response to CIS's RFE showing that, as of the filing of his petition, he had earned over $700,000 in PBR events and ranked 44th on the association's all-time money list—a ranking of the top earners in PBR history. He also submitted a history of PBR, which states that "[m]ore than 1,200 bull riders from the U.S., Australia, Brazil, Canada, and Mexico hold PBR memberships." R. 336. CIS determined that

> this does not demonstrate that [Eguchi's] remuneration is near the top of the field. Just the opposite, compared with the top 3 earners, whose earning have grossed between 3.9 and 5.15 million dollars, [Eguchi] cannot claim to have a salary illustrating that [he is] one of that *small percentage* who have risen to the *very top* of the field of endeavor and enjoying sustained national or international acclaim.

*Id.* at 23 (emphasis in original).

CIS again impermissibly conflates its step one analysis with step two. At step one,

Eguchi is not obligated to prove that his salary illustrates that he is one of a small percentage who have risen to the very top of the field of endeavor and enjoy sustained national or international acclaim. Rather, Eguchi need only provide documentation showing that he has commanded a high salary or other significantly high remuneration for services, in relation to others in the field. *See* 8 C.F.R. § 204.5(h)(3)(ix). No reasonable analysis could conclude that Eguchi failed to produce documentation of a salary that was high when compared to others in the field. CIS compares Eguchi only to the top three bull riders, ignoring how his earnings compare to the approximately 1,200 other PBR members.

In an analogous case, the *Muni* court rejected this very reasoning. In *Muni* the Immigration and Naturalization Service ("INS")[6] concluded that because the petitioner's salary was "well below the top salaries earned in the NHL . . . it has not been established that [his] salary is high in relation to that of other professional hockey players[.]" *Muni*, 891 F. Supp. at 445. But as the *Muni* court explained, "[t]hat is an overly grudging interpretation of its own regulation, which defines an athlete of extraordinary ability as 'one of that small percentage who has risen to the very top of the field of endeavor.'" *Id.* at 446 (quoting 8 C.F.R. § 204.5(h)(2)); *see also Grimson v. I.N.S.*, 1995 WL 134755, at *6 (N.D. Ill. Mar. 23, 1995) ("This court does not believe . . . that only superstars can qualify as having extraordinary ability.").

Eguchi actually produced documentation that he ranks 44th on the PBR's all-time

---

[6]CIS is a component of the U.S. Department of Homeland Security and the successor agency to the INS.

money list. Using the PBR's current membership of approximately 1,200 as the denominator, this would rank Eguchi in the top 3.67% of PBR members in terms of earnings. While this way of evaluating his comparative earnings may be open to challenge at step two, it is more than sufficient to satisfy his step one obligation to establish that he commanded significantly high remuneration for services in relation to other professional bull riders. *See Muni*, 891 F. Supp. at 445 (holding that NHL player satisfied Salary Criterion by showing that his salary was "well above average" of those at his position in NHL). Accordingly, the court concludes that Eguchi has established beyond peradventure that CIS's decision as to the Salary Criterion was arbitrary or capricious.

D

Because the court concludes that CIS's decision was arbitrary or capricious with respect to at least three criteria, it need not analyze whether the decision as to the Membership Criterion was also arbitrary or capricious.

\* \* \*

CIS determined that Eguchi did not submit sufficient evidence at step one, and it therefore declined to engage in the final merits determination at step two. Because CIS's decision is arbitrary or capricious, the court remands this matter to CIS for further proceedings consistent with this memorandum opinion and order.[7]

**SO ORDERED**.

June 23, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[7]The court will consider Eguchi's request for attorney's fees and costs on separate, timely motion.